IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DEBI MURACO**, | Case No. 2:14-cv-00154-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

George Wall, 1336 E. Burnside Street, Ste. 130, Portland, OR 97214. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Richard M. Rodriguez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Debi Muraco seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is not supported by substantial evidence, the decision is REVERSED and REMANDED further proceedings consistent with this Opinion and Order.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Ms. Muraco filed an application for DIB on December 29, 2010, alleging disability as of August 26, 2009. AR 178. Born in July, 1954, Ms. Muraco was 55 years old on the alleged disability onset date and 58 years old at the time of the hearing. AR 46, 178. She speaks English,

has a high school diploma, and completed two years of college. AR 46, 206. She worked for 25

years as a parts inspector at Precision Castparts Corporation, and stopped working due to pain

from fibromyalgia. AR 35, 48, 206. The Commissioner denied her application initially and upon

reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").

AR 101, 106, 115. After an administrative hearing, held on November 16, 2012, the ALJ found

Ms. Muraco not to be disabled in a decision dated November 23, 2012. AR 19-38, 43. The

Appeals Council denied Ms. Muraco's subsequent request for review on January 9, 2014. AR 1.

The ALJ's decision thus became the final decision of the Commissioner, and Ms. Muraco sought

review in this Court.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

> 1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
> §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
> significant mental or physical duties done or intended to be done for pay
> or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
> such work, she is not disabled within the meaning of the Act. 20 C.F.R.
> §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
> substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis. At step one, he found that Ms. Muraco had not engaged in substantial gainful activity since her alleged onset date of August 26, 2009. AR 21. At step two, the ALJ concluded that Ms. Muraco had the severe impairments of degenerative disc disease, dysfunction of joint, and fibromyalgia. *Id*. At step three, the ALJ determined that Ms. Muraco did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 23.

The ALJ next assessed Ms. Muraco's RFC and found that she could perform light work with the limitations that she could occasionally kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and that she must avoid concentrated exposure to hazards. AR 24. At step four, the ALJ found that Ms. Muraco was unable to perform her past relevant work as a casting inspector. AR 34. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Muraco could perform jobs that exist in significant numbers in the national economy including cutting inspector, parts inspector, and sheet metal pattern cutter. AR 35-36. Accordingly, the ALJ found Ms. Muraco was not disabled. AR 37-38.

**DISCUSSION**

Ms. Muraco argues that the ALJ erred by (A) failing at step two to find her depression to be severe; (B) rejecting the medical opinion of Michael Ferrell, M.D.; (C) failing to consider new evidence submitted to the Appeals Council; and (D) failing to consider inaudible portions of the hearing transcript.

**A.  Step Two Findings**

Ms. Muraco first argues that the ALJ erred at step two because he failed to find her depression to be severe. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.* "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Ms. Muraco was treated for depression in 1982 after a suicide attempt, and again in the 1990s. AR 292. On March 15, 2011, examining psychologist John Adler, Ph.D., diagnosed Ms. Muraco with depression. AR 292-94. Dr. Adler noted that Ms. Muraco had trouble coping with stress and had concentration problems when dealing with difficult or complex tasks. AR 294. Consulting physician Shirley Ingram, M.D., noted in November, 2009, that Ms. Muraco has a history of depression that may be exacerbated by her pain and limitations. AR 361. On April 25, 2012 Shanelle O'Dell, PA-C, also diagnosed depressive disorder. AR 322. Later in 2012 Ms. Muraco reported uncontrollable crying spells and problems with sleep, and was again diagnosed with depression, this time by Chau Le, D.O. AR 326, 329.

The ALJ resolved step two in Ms. Muraco's favor based on other severe impairments. AR 22. He also noted that "the record also mentions depression" but found that it did not cause more than minimal limitation in Ms. Muraco's ability to perform basic mental work activities. *Id.* The Commissioner argues that the psychological assessments of record do not establish any limitations stemming from depression. AR 80, 94, 294. For example, Dr. Ingram stated "I cannot assess any specific limitations due to depression." AR 362. Dr. Adler, however, pointed out that Ms. Muraco had trouble coping with stress and some other concentration problems when given complex tasks. AR 294. The ALJ gave Dr. Adler's opinion "significant weight," but did not include any corresponding limitations in the RFC relating to stress or concentration problems.[1] AR 22. The ALJ's omission of depression from the list of severe impairments at step two therefore resulted in error that was not harmless. *Lewis*, 498 F.3d at 911.

**B.  Medical Opinion of Michael Ferrell, M.D.**

Ms. Muraco next argues that the ALJ improperly ignored the opinion of treating physician Michael Ferrell, M.D. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

---

[1] The Commissioner correctly notes that Dr. Adler concluded that Ms. Muraco's depression would not interfere with her ability to work; however, the Commissioner does not examine the *type* of work permitted by Ms. Muraco's limitations as assessed by Dr. Adler (*e.g.* her ability, given her depression, to perform complex versus simple tasks). Def.'s Br. 7.

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

Dr. Ferrell began treating Ms. Muraco for fibromyalgia in 2009. AR 272. In 2011, he completed a check-form questionnaire regarding Ms. Muraco's symptoms and limitations, which did not include any supporting explanations. AR 295-98. Dr. Ferrell checked "Yes" to the question of whether Ms. Muraco's pain was so disabling that she could not perform even sedentary work. *Id*. at 298. Dr. Ferrell also checked that Ms. Muraco's pain or side effects of medication caused moderate effects on attention and concentration, which would preclude skilled work tasks. AR 299.

The ALJ rejected Dr. Ferrell's opinion for three reasons. AR 32. First, he found that Dr. Ferrell "failed to reference any objective evidence to support his rather conclusory opinions." *Id.* Opinions on a check-box form or form reports, which do not contain significant explanation of the basis for the conclusions, may be accorded little or no weight. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (permitting an ALJ to discredit medical opinions that "merely check [ ] boxes without giving supporting explanations"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"). The ALJ considered and discussed Dr. Ferrell's opinion and the ALJ's discrediting of the 2011 check-box form report because it did not provide objective findings to support Dr. Ferrell's conclusions was a specific and legitimate reason to discount this opinion by Dr. Ferrell.

As a second reason for rejecting Dr. Ferrell's opinion, the ALJ stated that more than one year had passed between Dr. Ferrell's examination of Ms. Muraco and the date of his evaluation. AR 32. This fact alone is not a legally sufficient reason for rejecting Dr. Ferrell's opinion. The record contains extensive chart notes from Dr. Ferrell's encounters with Ms. Muraco during the relevant time period from which Dr. Ferrell could have completed his 2011 opinion. The mere passing of time is an insufficient basis on which to reject Dr. Ferrell's opinion. Although the temporal gap indicates that Dr. Ferrell did not have personal knowledge concerning Ms. Muraco's condition at the time he completed the functional assessment, Dr. Ferrell's earlier treatment of Ms. Muraco was during the relevant period.

The ALJ's third and final reason for rejecting Dr. Ferrell's opinion was that the opinion was not consistent with the totality of the record, including gaps in treatment, improvement of Ms. Muraco's neck pain with conservative treatment, the lack of need for further diagnostic

testing, Ms. Muraco's daily activities, and improvement in her fibromyalgia symptoms with medication compliance. AR 32. The Court also rejects this reasoning. First, regarding conservative treatment and gaps in treatment, Ms. Muraco did not have health insurance for much of the relevant period. Ms. Muraco's gaps in insurance roughly correspond to the gaps in her treatment record. AR 239, 327, 354. Second, regarding the lack of further diagnostic testing, the Commissioner does not explain how a lack of an "indicated need for further diagnostic testing" is inconsistent with Dr. Ferrell's conclusive diagnoses. Third, the Commissioner does not point to any of Ms. Muraco's daily activities that contradict Dr. Ferrell's opinion. AR 32. The ALJ points to Ms. Muraco's activities of "vacuuming, doing laundry, shopping, using [the] computer daily, watching television, [and] walking her dogs daily." *Id.* These activities are consistent with the medical evidence that Ms. Muraco's fibromyalgia-related pain waxes and wanes. Finally, there is little evidence in the record to show that Ms. Muraco's fibromyalgia has significantly improved to an extent that contradicts Dr. Ferrell's assessment, nor is there reason to believe that an improvement in Ms. Muraco's neck pain justifies the rejection of Dr. Ferrell's assessment of her symptoms and limitations. *See* AR 272, 295-98.

In sum, because the ALJ provided a specific, legitimate reason to reject Dr. Ferrell's 2011 report, the ALJ did not err in his assessment of Dr. Ferrell's opinion.

## C.  New Evidence

Ms. Muraco also argues that the ALJ's decision is not supported by substantial evidence in light of the additional exhibits submitted to the Appeals Council after the ALJ's decision. District courts must consider additional evidence submitted to the Appeals Council when the Appeals Council considers the new evidence in deciding whether to review a decision of the ALJ. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). The new

evidence "becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id.*

Here, the new evidence is comprised of treatment notes and two consultative examination reports from rheumatologist Dr. Ingram. AR 344-52, 353-67. Dr. Ingram reviewed Ms. Muraco's medical records and opined that it would be reasonable to allow Ms. Muraco "to change task every 20-30 minutes or take 1-2 minute breaks for stretching" and to allow "that she be able to change position from standing to sitting every 20 minutes without interruption [of] work flow." AR 361. Dr. Ingram also stated that Ms. Muraco could not reasonably reach or lift more than 10 pounds above mid chest height, or push or pull more than 10 pounds above mid chest height. *Id.* Dr. Ingram recommended that Ms. Muraco should be restricted to "assembly-type work for the indefinite future due to fibromyalgia." AR 355. Dr. Ingram concluded that Ms. Muraco is best suited for sedentary work and should not do "any type of assembly-type work for the indefinite future due to fibromyalgia." AR 355.

The Appeals Council considered the new evidence but found that it did not provide a basis for overturning the ALJ's decision. AR 2. Because the Appeals Council considered the new evidence, it is part of the administrative record that the Court must consider. Considering the new evidence, the Court finds that it does not render the ALJ's decision unsupported by substantial evidence in the record. For example, Dr. Ingram qualified her opinion that Ms. Muraco should perform sedentary work by stating that Ms. Muraco was in fact capable of light work with some limitations. AR 355. The Court also finds no conflict with Dr. Ingram's recommendation that Ms. Muraco perform only "assembly-type work" and the ALJ's finding that Ms. Muraco could perform jobs that require frequent reaching and handling. AR 35-36.

Because the ALJ erred at step two and in his rejection of Dr. Ferrell's opinion, however, the Appeals Council's evaluation of the new evidence is immaterial to the Court's conclusion.

### D.  Inaudible Transcript

Ms. Muraco also argues that the ALJ's decision is not supported by substantial evidence because the VE was unable to hear Ms. Muraco's full description of her job duties as an employee of Precision Castparts. Pl.'s Br. 17-18. Here, several lines in the hearing transcript are marked "inaudible." *See* AR 50-72. The majority of these instances occur during the VE's testimony. AR 57-72. The Court finds that this is immaterial to the ALJ's ultimate disability determination because the ALJ found that Ms. Muraco could not perform any of her past relevant work. Thus any error in allowing the VE to opine based upon Ms. Muraco's description of her past job duties was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Because the ALJ elsewhere committed reversible error, however, his decision is reversed.

### E.  Nature of the Remand

Although a court generally should remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, --- F.3d ---, 2014 WL 7332774, at *7 (9th Cir. Dec. 24, 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). It was recently described by the United Court of Appeals for the Ninth Circuit:

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, --- F.3d ---, 2014 WL 7398892, at *7 (9th Cir. Dec. 31, 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled"). Moreover, when remanding for further development of the record, the district court has the discretion to remand on an open record or with the directive that the claimant's testimony be credited as true. *See Burrell*, 2014 WL 7398892, at *6 (observing that a court's "flexibility" includes the option to "remand on an open record for further proceedings" (citing *Garrison*, 759 F.3d at 1021)).

Here, the ALJ failed to include Ms. Muraco's depression in the list of severe impairments at step two. The Court does not find, however, the further proceedings would not be useful in assessing the potential limitations that may be required as a result of Ms. Muraco's depression.

The ALJ should be provided the opportunity to consider Ms. Muraco's depression and its concomitant limitations, if any, in assessing the RFC. Accordingly, the case is remanded for further proceedings.

<strong>CONCLUSION</strong>

The Commissioner's decision is not supported by substantial evidence in the record because the ALJ failed to consider Ms. Muraco's depression as a significant impairment. The Commissioner's decision is therefore REVERSED and REMANDED for further proceedings consistent with this Opinion.

**IT IS SO ORDERED**.

DATED this 3rd day of February, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge